IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

THOMAS PUGH, JR.,

      Petitioner,

                                Civil Action No.

      v.                         9:02-CV-1050 (DNH/DEP)

WILLIAM MAZZUCA,

      Respondent.

_____

APPEARANCES:                  OF COUNSEL:

FOR PETITIONER:

THOMAS PUGH, JR., *Pro Se*

FOR RESPONDENT:

HON. ELIOT SPITZER           PATRICK F. MACRAE, ESQ.
Office of Attorney General      Ass't Attorney General
New York State Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     Petitioner Thomas Pugh, Jr., a New York State prison inmate as a

result of a 1996 conviction for two counts of first degree rape and one

count of first degree sodomy, has commenced this proceeding seeking

federal habeas relief pursuant to 28 U.S.C. § 2254.  In an amended petition filed in response to a court directive, Pugh asserts five separate grounds in support of his request for federal habeas intervention. Respondent has answered Pugh's petition, arguing both that as a procedural matter Pugh's petition is untimely and additionally that the grounds advanced in the petition lack merit.

I find that Pugh's petition is barred by the governing one year statute of limitations applicable to habeas petitions in light of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Since I cannot find that petitioner may be properly excused from the consequences of his late filing, I recommend that his petition, as amended, be denied and dismissed on this procedural basis.

I.   BACKGROUND

According to the testimony adduced at petitioner's trial, in March, 1995, D.B.[1] lived in an apartment across the hall from the petitioner in

---

[1]   Under New York law:

> [t]he identity of any victim of a sex offense ... shall be confidential.  No ... court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection.

New York's Civil Rights Law  § 50-b.  In light of this provision, I will refer to the

Binghamton, New York.  *See* Transcript of Trial of Thomas Pugh
(11/15/95) at 182-85.  On March 25, 1995, D.B. began staying at the
apartment of a friend because she owed Pugh some money and was
"scared because [she] didn't have it."  Trial Tr. at 187.

At approximately 4:00 on the morning of March 25, 1995, Pugh and
an individual named Wally, who was a "bouncer" at a neighborhood bar,
arrived at the apartment where D.B. was staying.  Trial Tr. at 188-89.
When Pugh discovered D.B. was there, he "started cursing [D.B.], yelling
at [her], asking where his money was."  Trial Tr. at 189-90.  He then began
hitting D.B. and declared that he "owned" her.  Trial Tr. at 190.  Petitioner
then ordered her to accompany the two men to Pugh's apartment, a
directive with which she complied out of fear.  Trial Tr. at 191-94.  The
three then entered Pugh's apartment, after which he pulled D.B. toward a
back bedroom in his residence.  Trial Tr. at 195-96.  When the two were in
the bedroom, Pugh began hitting D.B. in the face and ordered her to
remove her clothing.[2]  Trial Tr. at 197.  The two then proceeded to have

---

victim as "D.B." so as to ensure her privacy.  *See Lucidore v. New York State Div.
of Parole*, 209 F.3d 107, 109 n.4 (2d Cir.); *cert. denied*, 531 U.S. 873, 121 S.Ct.
175 (2000) (substantial compliance with this statute is obtained where the court
refers to the victim by use of initials).

[2]      At the time, Pugh appeared to be "extremely angry."  Trial Tr. at 198.

sexual intercourse, during which time D.B. "kept crying, asking him to stop, telling him [she] was sorry." Trial Tr. at 200.  D.B. testified that Pugh nevertheless "kept hitting [D.B] and hitting [her], choking [her]." *Id.*  After approximately twenty minutes, Pugh ordered D.B. to perform oral sex on him.  She acceded to his demand and performed oral sodomy on Pugh for approximately ten minutes.[3]  Trial Tr. at 200-02.  Pugh then lied down on the bed and directed D.B. to again engage in sexual intercourse with him.[4] Trial Tr. at 202-03.

After a period of time, someone began knocking on the bedroom door.  Trial Tr. at 204.  Pugh left the bed, put on some clothes and answered the door.  *Id.*  While he was speaking with the individual at the doorway, D.B. left the room by way of a back staircase.[5]  *Id.*  After exiting, the victim began knocking on the doors of other apartments in the building and eventually succeeded in persuading a neighbor to call the police.  Trial Tr. at 207.  D.B. was then taken by ambulance to a nearby hospital, where she was treated for various injuries and examined by medical personnel.

---

[3]      D.B. attempted to stop the forced sexual conduct, but Pugh "kept smacking [D.B.]."  Trial Tr. at 202.

[4]      During the attack, D.B. pleaded with Pugh and cried; however, he just kept repeating to her his belief that she was indebted to him.  Trial Tr. at 203.

[5]      At the time, D.B. was clad only in a pair of socks.  Trial Tr. at 205.

4

Trial Tr. at 207-08.

II.    PROCEDURAL HISTORY

    A.    State Court Proceedings

As a result of the March 25, 1995 incident, a Broome County grand jury returned an indictment, charging Pugh with two counts of first degree rape, in violation of N.Y. Penal L. § 130.35, and one count of first degree sodomy, in violation of N.Y. Penal L. § 130.50.  Pugh was ultimately tried in connection with these charges before a jury in Broome County Court beginning on November 15, 1995, with Broome County Court Judge Martin E. Smith presiding.  At the conclusion of that trial, Pugh was found guilty on all counts.  Trial Tr. at 743-45.  As a result of the jury's verdict, on November 27, 1995, petitioner was sentenced by Judge Smith as a second felony offender to concurrent terms of imprisonment of between ten and twenty years on each of the counts of which he was convicted.  *See* Transcript of Sentencing (11/27/95) at 6.

Pugh appealed his conviction and sentence to the New York State Supreme Court, Appellate Division, Third Department.  With the assistance of counsel, Pugh argued in his appeal that 1) the trial court erred in denying Pugh's suppression motion; 2) the county court improperly denied

Pugh's request for a mistrial; 3) the verdict was both based upon legally insufficient evidence and against the weight of the evidence; and 4) the sentence imposed was excessive.  The Third Department issued a decision on January 8, 1998 in which it rejected each of petitioner's contentions and affirmed his conviction and sentence.  *See People v. Pugh*, 246 A.D.2d 679, 667 N.Y.S.2d 465 (3d Dept. 1998).  On July 7, 1998, the Court of Appeals denied Pugh leave to appeal the Appellate Division's decision.  *People v. Pugh*, 91 N.Y.2d 976, 672 N.Y.S.2d 855 (1998).  Pugh thereafter moved for reconsideration of that order.  *See* Record on Appeal ("Record") at H1197.[6]  On April 9, 1998, the Court of Appeals granted Pugh's request for reconsideration, but nevertheless affirmed its prior decision denying Pugh's application for leave to appeal. *People v. Pugh*, 92 N.Y.2d 882, 678 N.Y.S.2d 29 (1998).

Following the denial of the direct appeal of his conviction, Pugh embarked on a series of further efforts seeking the reversal of his conviction.  On June 9, 1998, Pugh filed a motion to vacate his judgment of conviction pursuant to section 440.10 of New York's Criminal Procedure

---

[6]      Although the court was provided with a copy of a letter from New York's Court of Appeals acknowledging Pugh's motion for reconsideration, it did not receive a copy of that application.

Law ("CPL").  *See* Record at H1270 ("June, 1998 CPL Motion").  By

decision and order dated September 29, 1998, the county court denied that

application in all respects.  Record at H1379-82.  Pugh's request for leave

to appeal that decision was denied by the Third Department on December

16, 1998.  Record at H1390.

On November 3, 1999, Pugh filed an application with the county court

for a copy of the transcripts generated as a result of the grand jury

proceedings that resulted in the indictment upon which his criminal trial

was based.  Record at H1394-95.  On December 7, 1999, Judge Smith

denied that request, concluding that there was "no basis to order the

transcripts of the proceedings [to] be provided to the defendant without

cost."  *See People v. Pugh*, No. 95-241 (Broome Cty. Ct. Dec. 7, 1999)

("December, 1999 Order").  Pugh thereafter filed a request with the

Appellate Division for an extension of time in which to seek leave to appeal

that December, 1999 Order, Record at H1405; that request, however, was

denied by the Third Department in an order dated March 16, 2000.  Record

at H1446.

By application dated February 9, 2000, Pugh filed a second CPL

Motion with the county court.[7]  Record at H1411 ("February, 2000 CPL

Motion").  The county court denied that request by decision and order

dated March 17, 2000.  Record at H1457-58.  On the same day the county

court denied Pugh's February, 2000 CPL Motion, Pugh sought permission

to again amend that application.  Record at H1459-60.  Judge Smith

denied that request by letter dated March 23, 2000, Record at H1462, and

that determination was thereafter formally incorporated in an order of  the

county court dated April 11, 2000.  Record at H1463.  Pugh's request for

additional time in which to seek leave to appeal that order was denied by

the Appellate Division on June 23, 2000.  Record at H1631.

On May 17, 2000, Pugh filed an application with the county court

requesting that the court grant his application for deoxyribonucleic acid

("DNA") testing of the evidence secured in conjunction with the criminal

investigation relating to the assault on D.B.  Record at H1479.  The county

court denied that application by decision and order dated June 16, 2000.

Record at H1508-12.  The Third Department denied Pugh's appeal of the

county court's order in a memorandum and order dated November 15,

2001.  *People v. Pugh*, 288 A.D.2d 634, 732 N.Y.S.2d 673 (3d Dept.

---

[7]     Pugh subsequently amended that application on February 29, 2000.
Record at H1432.

8

2001).

On June 24, 2001, Pugh filed his final state-court challenge to his

conviction in the form of another CPL 440.10 Motion ("June, 2001 CPL

Motion").  *See* Record at H1632.  Judge Smith denied that request in his

decision and order dated September 4, 2001.  Record at H1692-94.  The

county court subsequently denied Pugh's request for reconsideration of

that order, Record at H1731-32, and the Appellate Division denied Pugh's

request for leave to appeal in its order dated March 25, 2002  Record at

H1756.

B.    This Proceeding

Petitioner commenced this proceeding in the United States District

Court for the Southern District of New York on May 15, 2002.[8]  Petition

(Dkt. No. 1) at 1.  By order of Chief United States District Judge Michael B.

Mukasey issued on July 23, 2002, the proceeding was transferred to this

---

[8]    Although Pugh's petition was file-stamped by the clerk of that court on
May 21, 2002, the Second Circuit has held that due to the unique difficulties faced
by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed
at the time he or she hands the papers to the prison authorities for transmittal to the
court.  *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir), *modified on reh'g*, 25 F.3d 81
(2d Cir. 1994); *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir.), *cert. denied*, 534 U.S.
886, 122 S.Ct. 197 (2001) (extending "prison mailbox rule" to petitions seeking writ
of habeas corpus pursuant to 28 U.S.C. § 2254).   Pugh dated his petition May 15,
2002.  *See* Petition (Dkt. No. 1) at 7.  Applying the prison mailbox rule, I therefore
find that Pugh should be deemed to have commenced this proceeding on
Wednesday, May 15, 2002, the date on which he signed his petition.

district in light of the fact that petitioner's trial and conviction occurred within the geographical boundaries of the Northern District of New York. *See* Dkt. No. 3.  Following routine review of the petition, the assigned District Judge, the Hon. David N. Hurd, directed Pugh to file an amended petition in this matter explaining in more detail the collateral challenges Pugh asserted in the state courts to afford the court the opportunity to preliminarily examine the issue of whether the petition was timely filed. *See* Dkt. No. 6.  In response to that directive, an amended petition was filed by Pugh on October 15, 2002.  *See* Dkt. No. 8.  In his amended petition, Pugh discusses the state court challenges he has pursued in his quest to vacate his conviction, and argues that he is entitled to federal habeas intervention because 1) the prosecution improperly failed to request a pretrial *Ventimiglia* hearing;[9] 2) defense counsel wrongfully failed to object to the prosecution's reference at trial to uncharged crimes involving Pugh; 3) he received the ineffective assistance of trial counsel; 4) the prosecution improperly withheld *Brady*[10] and *Rosario*[11] material from

---

[9]      *People v. Ventimiglia*, 52 N.Y.2d 350, 438 N.Y.S. 2d 261 (1981).

[10]     *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

[11]     *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S. 2d 448 (1961).

10

him; and 5) the verdict was based upon insufficient evidence.  *See*
Amended Petition (Dkt. No. 8).  Judge Hurd then issued an order
permitting the filing of the amended petition and directing a response.  Dkt.
No. 9.

The Office of the Attorney General for the State of New York, acting
on respondent's behalf, subsequently filed an answer and memorandum in
opposition to the amended petition, and has provided the court with various
records associated with the relevant state court proceedings.  Dkt. Nos.
14-15.  In opposing Pugh's petition, respondent initially argues that it was
not timely filed by him within the one year limitations period that governs
federal habeas petitions and, alternatively, that the claims raised in the
petition are without merit.  Dkt. No. 15.

Pugh's petition, which is now ripe for determination, has been
referred to me for the issuance of a report and recommendation pursuant
to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule
72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Timeliness of Petition

Enactment by Congress of the AEDPA brought about significant

11

changes to the prisoner litigation landscape. One of those was the

institution of a one-year statute of limitations for habeas corpus petitions

filed after April 24, 1996. 28 U.S.C. § 2244(d).[12]

In the underlying criminal matter, the Court of Appeals denied Pugh's

application for leave to appeal, on reconsideration, on July 7, 1998.

Record at H1354-55. Approximately one month *prior to* that date, Pugh

filed his initial motion to vacate his judgment of conviction pursuant to CPL

§ 440.10. *See* June, 1998 CPL Motion. The filing of Pugh's Article 440

motion served to toll the AEDPA's statute of limitations. *See* 28 U.S.C. §

2244(d)(2). The trial court denied that application motion on September

29, 1998, Record at H1379-82, and Pugh's application for leave to appeal

---

[12]    That section provides that:

(1) A 1-year period of limitation shall apply to an application for a writ
of habeas corpus by a person in custody pursuant to the judgment of
a State court. The limitation period shall run from the latest of --

(A) the date on which the judgment became final
by the conclusion of direct review or the
expiration of the time for seeking such review;

*           *           *

(2) The time during which a properly filed application for State
post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

that decision was denied by the Third Department on December 16, 1998.
Record at H1390.

The next state-court application filed by Pugh in the state courts was
his application filed pursuant to section 1102(b) of New York's Civil
Practice Law and Rules ("CPLR"), seeking a copy of the grand jury
transcripts generated in the criminal matter below.[13]  However, because
that application did not challenge Pugh's conviction, the filing of that
request did not toll the AEDPA's statute of limitations.  *See Lebron v.
Sanders*, No. 02 CIV. 6327, 2004 WL 369141, at *2 (S.D.N.Y. Feb. 27,
2004).  Accordingly, the governing limitations period began to run on
December 16, 1998 – the date on which the Appellate Division denied
Pugh's request for leave to appeal the county court's decision of
September 29, 1998 denying Pugh's June, 1998 CPL Motion.  The statute
of limitations continued to run from that date until February 9, 2000 – the
date on which petitioner signed his February, 2000 CPL motion.  Record at
H1411.  By that time, 420 days of the AEDPA's limitations period had
already run.  Although Pugh's February 9, 2000 filing served to toll the

---

[13]     CPLR § 1102(b) provides, in pertinent part, that "[a] poor person may
be furnished with a stenographic transcript without fee by order of the court ..."  *See
id.*; *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (quoting CPLR § 1102(b)).

statute of limitations, it did not cause the one-year statute of limitations to run anew.  As the Second Circuit has held, such an interpretation would allow prisoners to "extend or manipulate the deadline for federal habeas review by filing additional petitions in state court."  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.) (per curiam) (AEDPA's tolling provision excludes time during which properly filed state applications for post-conviction relief are pending but does not reset date from which the one-year limitations periods begins to run), *cert. denied* 531 U.S. 840, 121 S.Ct. 104 (2000); *see also Youngblood v. Greiner*, No. 00 CIV. 7984, 2003 WL 145546, at *2 n.3 (S.D.N.Y. Jan. 21, 2003) ("*Smith v. McGinnis* ... made clear that the limitations period does not begin anew after collateral relief is pursued"); *Rodriguez v. People of State of New York*, No. 01CIV.9374, 2003 WL 289598, at *13 (S.D.N.Y. Feb. 11, 2003) (citing *Smith*); *Scarola v. Kelly*, 99CIV.4704, 2001 WL 849449 at *3 (S.D.N.Y. July 27, 2001) (filing of a post-judgment state court motion does not restart the one year limitations period); *Stokes v. Miller*, 00CIV.0806, 2000 WL 1121364, at *2 n.3 (S.D.N.Y. July 21, 2000) ("[i]t is well-settled that post conviction or other collateral review does not start the one year statute of limitations to run anew") (citing *Smith*).

14

The county court denied Pugh's February, 2000 CPL Motion by decision and order dated March 17, 2000, and denied his subsequent motion to amend that application in decisions issued on March 23, 2000 and April 11, 2000.  *See* Record at H1457-58, H1462-63.  Pugh sought leave to appeal those orders in his application to the Third Department dated March 5, 2001, Record at H1560-96, which was denied by that court on May 4, 2001.  Record at H1628.

Although the AEDPA's limitations period would ordinarily begin to run following that decision of the Third Department, I note that nearly one year before that ruling of the Appellate Division, Pugh filed a motion pursuant to CPL § 440.30(1-a) in which he sought DNA testing of the forensic evidence secured in conjunction with the underlying criminal investigation.  *See* Record at H1479.  "A motion pursuant to [CPL] section 440.30(1-a) challenges [a] petitioner's conviction and tolls the limitation period under AEDPA."  *McDonald v. Smith*, No. 02-CV-6743, 2003 WL 22284131, at *6 (E.D.N.Y. Aug. 21, 2003), *aff'd*, No. 03-2686, 134 Fed.Appx. 466 (2d Cir. June 10, 2005) (unreported).  I therefore find that the limitations period was tolled throughout the period of time that Pugh's 440.30(1-a) motion was pending – that is, from May 17, 2000 through November 15, 2001, the date

15

on which Appellate Division denied Pugh's appeal of the county court's
order denying his CPL § 440.30(1-a) application.  *See Pugh*, 288 A.D.2d at
634, 732 N.Y.S.2d at 673; *see*, *e.g. Carey v. Saffold*, 536 U.S. 214, 219-
20, 122 S.Ct. 2134, 2138 (2002) ("[A]n application is pending [for AEDPA
tolling purposes] as long as the ordinary state collateral review process is
'in continuance' – i.e ., 'until the completion of' that process.").

Prior to issuance of the November 15, 2001 order of the Third
Department, however, Pugh filed his June, 2001 CPL Motion.  *See* Record
at H1632.  Because that was a "properly filed application for state
post-conviction or other collateral review," the limitations period applicable
to his federal habeas corpus petition remained tolled until March 25, 2002,
the date on which the Appellate Division denied Pugh's request for leave to
appeal the denial of his June, 2001 CPL Motion.[14]  *See* Record at H1756;

---

[14]    By application dated November 15, 2001, Pugh moved for
reconsideration of the Third Department's May 4, 2001 order denying Pugh leave to
appeal the county court's orders denying Pugh's February, 2000 CPL Motion and
request to amend that application. *See* Record at H1721-29.  In *Rodriguez v.
Portunodo*, No. 01 CIV.547, 2003 WL 22966293 (S.D.N.Y. Dec. 15, 2003), the
district court opined that a motion to reargue an order of the Appellate Division
denying leave to appeal the denial of an Article 440 motion was a "properly filed
application" that tolled the AEDPA's statute of limitations. *Rodriguez*, 2003 WL
22966293, at *2-3 (citing CPL § 470.50(1)).  Even were I inclined to follow
*Rodriguez's* lead, however, and conclude that Pugh's November 15, 2001 motion
for reconsideration tolled the applicable statute of limitations, I note that by the time
such application was filed on November 15, 2001, the limitations period was
already subject to statutory tolling in light of Pugh's CPL § 440.30(1-a) and June,

*see*, *e.g*, *Dominguez v. Portuondo*, No. 02 CIV. 5885, 2004 WL 2002930, at *2-3 (S.D.N.Y. Sept. 8, 2004) (AEDPA is tolled throughout the period of time that overlapping state-court challenges to conviction are pending). The statute of limitations began to run anew on that date and continued to run for another fifty days – until May 15, 2002 – the date Pugh signed his petition.  *See* Petition (Dkt. No. 1) at 7.

As can be seen, excluding the time during which the statute of limitations was tolled, Pugh filed the present action 470 days after his judgment of conviction became final.  Pugh has therefore exceeded the statute of limitations by approximately 105 days, and this action is subject to dismissal unless he has established a basis for the court to excuse the patently late filing of his petition.  *See* 28 U.S.C. § 2244(d); *Smith*, 208 F.3d at 17-18; *Salerno v. People of NYS*, No. 98-CV-1187, 2002 WL 31741253, at *3 (N.D.N.Y. Dec. 5, 2002) (Sharpe, M.J.) (collecting cases), *adopted Salerno v. People of NYS*, No. 98-CV-1187 (Dkt. No. 20) (N.D.N.Y. Mar. 25, 2003) (McAvoy, J.).

The Second Circuit has indicated that a habeas petition that would

_____

2001 CPL motions.  Thus, I do not consider whether petitioner's November 15, 2001 motion for reargument served to independently toll the AEDPA's limitations period.

otherwise be subject to dismissal in light of the AEDPA's statute of

limitations may nevertheless be considered by a district court where the

court determines that the statute of limitations should be equitably tolled.

*See Smith*, 208 F.3d at 17-18.  Additionally, although the Second Circuit

has acknowledged that the "question remains open" as to whether the

United States Constitution requires that an "actual innocence'" exception

be engrafted onto the AEDPA's statute of limitations, *see Whitley v.*

*Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003), that court has nonetheless

directed district courts to consider a claim of actual innocence before

dismissing a habeas petition as untimely filed.  *Id.*; *see also Doe v.*

*Menefee*, 391 F.3d 147, 161 (2d Cir. 2004) (citing *Whitley*); *Austin v.*

*Duncan*, No. 02-CV-0732, 2005 WL 2030742, at *4 (W.D.N.Y. Aug. 23,

2005) (citations omitted).

   B.   <u>Factors to Consider Prior to Finding a Habeas Petition to be
        Time-barred</u>

      1.   <u>Equitable Tolling</u>

   Equitable tolling applies "only in the 'rare and exceptional

circumstance[ ].' " *Smith*, 208 F.3d at 17 (quoting *Turner v. Johnson*, 177

F.3d 390, 391-92 (5th Cir.1999)) (alteration in original); *see also Menefee*,

391 F.3d at 159 (citing *Smith*); *Corrigan v. Barbery*, 371 F.Supp.2d 325,

18

330 (W.D.N.Y. 2005) (citing *Smith*); *Austin*, 2005 WL 2030742, at *3.

Specifically, it has been held that the equitable tolling of the AEDPA's

statute of limitations is only available when "extraordinary circumstances"

prevent a prisoner from filing a timely habeas petition.  *Pace v.

DiGuglielmo*, ___ U.S. ___, ___, 125 S.Ct. 1807, 1814 (2005) (citation

omitted); *see also Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000)

(quoting *Smith*, 208 F.3d at 17); *Doe*, 391 F.3d at 154; *Spaulding v.

Cunningham*, No. 04-CV-2965, 2005 WL 1890398, at *3 (E.D.N.Y. Aug. 4,

2005); *Agramonte v. Walsh*, 00CV892, 2002 WL 1364086, at *1 (E.D.N.Y.

June 20, 2002).  "To merit application of equitable tolling, the petitioner

must demonstrate that he acted with reasonable diligence during the

period he wishes to have tolled, but that despite his efforts, extraordinary

circumstances beyond his control prevented successful filing during that

time."  *Smaldone v. Senkowski*, 273 F.3d 133 (2d Cir. 2001) (internal

quotation and citation omitted), *cert. denied*, 535 U.S. 1017 (2002); *see

also Warren*, 219 F.3d at 113 (citing *Smith*); *West v. Hamill*, No.

04-CV-2393, 2005 WL 1861735, at *1 (E.D.N.Y. Aug. 1, 2005) (citing

*Smith*)

      The record establishes that Pugh did not act with reasonable

19

diligence between the time the AEDPA was enacted and the date on which he filed this action.  Significantly, Pugh has not alleged, in any of the documents he has filed in this action, that he was prevented from timely filing his habeas petition due to circumstances over which he had no control.  Moreover, the numerous – and sometimes overlapping – applications filed by Pugh in the state courts conclusively establishes that there was no impediment to Pugh timely filing a federal habeas petition with this court.  I therefore find no basis to invoke equitable tolling in order to salvage petitioner's untimely petition.

    2.   <u>Actual Innocence</u>

The Second Circuit has provided guidance concerning the manner in which a claim of actual innocence under the AEDPA is to be considered by the district court, noting that

> the district court should examine the following questions sequentially:  (1) Did [petitioner] pursue his actual innocence claim with reasonable diligence?  (2) If [petitioner] did not pursue the claim with reasonable diligence, must an actual innocence claim be pursued with reasonable diligence in order to raise the issue of whether the United States Constitution requires an "actual innocence" exception to the AEDPA statute of limitations?  (3) If [petitioner] did pursue the claim with reasonable diligence or if reasonable diligence is unnecessary, does [petitioner] make a credible

> claim of actual innocence?  (4) If [petitioner] does
> make a credible claim of actual innocence, does the
> United States Constitution require an "actual
> innocence" exception to the AEDPA statute of
> limitations on federal habeas petitions?

*Whitley*, 317 F.3d at 225-26.

A fair reading of the state court challenges to Pugh's conviction establishes that he maintains his innocence of the crimes of which he stands convicted.  *See*, *e.g.*, CPL § 440.30(1-a) Motion at ¶ 4 (alleging that DNA tests would establish that Pugh "did not engage in sexual intercourse" with D.B.).

In *Menefee*, the Second Circuit noted:

> The *Schlup* Court[15] carefully limited the type of
> evidence on which an actual innocence claim may
> be based and crafted a demanding standard that
> petitioners must meet in order to take advantage of
> the gateway.  The petitioner must support his claim
> *"with new reliable evidence* – whether it be
> exculpatory scientific evidence, trustworthy
> eyewitness accounts, or critical physical evidence –
> *that was not presented at trial*."  *Schlup*, 513 U.S. at
> 324, 115 S.Ct. 851[, 865].  Because *Schlup*
> explicitly states that the proffered evidence must be
> reliable, the habeas court must determine whether
> the new evidence is trustworthy by considering it
> both on its own merits and, where appropriate, in
> light of the pre-existing evidence in the record.  *See*
> *id.* at 327-28, 115 S.Ct. 851[, 867-68].

---

[15]     *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851 (1995).

21

*Menefee*, 391 F.3d at 161 (emphasis added).

Thus, for a district court to properly find that a petitioner has made a credible showing of actual innocence, he or she must present evidence to the district court that was never considered by the original factfinder that convicted him or her.  *See Garcia v. Portuondo*, 334 F.Supp.2d 446, 454 & n.51 (S.D.N.Y. 2004).

Pugh has not submitted any evidence, in the form of eyewitness accounts, alibi witnesses or physical or scientific evidence, which establishes his innocence of the crimes of which he stands convicted.  To the contrary, Pugh's claim of actual innocence appears to be premised on his claim that D.B.'s testimony is incredible, and thus not worthy of belief. *See* Amended Petition (Dkt. No. 7) at 28-30 (arguing that his conviction was "determined by the testimony of [D.B.]" who was "an admitted prostitute, drug addict and criminal").  Such an unsupported assertion falls well short of the demanding standard of proof imposed on federal habeas petitioners asserting a claim of actual innocence.[16]  *E.g. In re Byrd*, 269

---

[16]    I note further that a habeas claim that a prosecution witness' testimony was not credible does not afford an independent basis for habeas intervention; a federal habeas court must "defer to the jury's resolution of any conflicts in the testimony and its assessment of the witness' credibility."  *Feliz v. Conway*, ___ F.Supp.2d ___, No. 03 CIV. 9751, 2005 WL 1733079, at *3 (S.D.N.Y. July 25, 2005) (citing *Jackson*); *see also Ferguson v. Walker*, No. 00CIV1356, 2001

F.3d 561, 577 (6th Cir. 2001).

Because Pugh has failed to make a credible claim of actual innocence based upon new, reliable evidence, I find that he cannot now seek safe harbor from the dismissal of his petition based upon a claim of actual innocence.  *See Menefee*, 391 F.3d at 161.

IV.   SUMMARY AND RECOMMENDATION

Excluding the period of time during which the AEDPA's statute of limitations was tolled, Pugh filed his petition seeking this court's habeas intervention 470 days after his judgment of conviction became final. Pugh's commencement of this proceeding thus occurred some 105 days beyond expiration of the one year period of time during which his petition could have been timely filed.  Moreover, the facts of this case do not demonstrate that extraordinary circumstances prevented Pugh from timely filing his federal habeas petition, nor has he supported his claim of actual innocence with new, reliable evidence.

_____

WL 869615, at *5 (S.D.N.Y. Aug. 2, 2001) (Peck, M.J.); *Bellezza v. Fischer*, No. 01-CV-1445, 2003 WL 21854749, at *15 (E.D.N.Y. Aug. 6, 2003) (citations omitted); *Cottrel v. New York*, 259 F.Supp.2d 300, 308 (S.D.N.Y. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 850-51 (1983)); *Fagon v. Bara*, 717 F.Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony") (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)).

It is therefore hereby

RECOMMENDED, that the petition in this matter be DENIED and DISMISSED in its entirety.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 28, 2005
            Syracuse, NY