UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS PUGH, JR., <br><br> Petitioner, <br><br> vs. <br><br> WILLIAM MAZZUCA, Superintendent of the Fishkill Correctional Facility, <br><br> Respondent. | No. 9:02-cv–01050-JKS/DEP <br><br> MEMORANDUM DECISION |

On July 23, 2002, Thomas Pugh, Jr. petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving three concurrent terms of 10 to 20 years each at the Fishkill Correctional Facility, Beacon, New York, following conviction after jury trial of two counts of Rape in the First Degree and one count of Sodomy in the first degree in Broome County Court, New York. Respondent has filed an answer; Petitioner has not filed a traverse. The Court has determined that the issues have been fully developed by the briefing and oral argument would not assist in deciding the petition.

Petitioner appealed his conviction to the Appellate Division of the New York Supreme Court, which affirmed on January 8, 1998, *People v. Pugh*, 667 N.Y.S.2d 465 (N.Y.A.D.1998). On April 9, 1998 the New York Court of Appeals denied petitioner's application for leave to appeal to that court, *People v. Pugh*, 695 N.E.2d 724 (N.Y.1998) (Table). Petitioner timely sought reconsideration in the New York Court of Appeals, which was granted and permission to appeal again denied on July 7, 1998, *People v. Pugh*, 700 N.E.2d 567 (N.Y.1998) (Table). His conviction became final 90 days later, Monday, October 5, 1998, when his time for petitioning the U.S. Supreme Court for *certiorari* expired. Because Petitioner filed his petition after April 24, 1996, the time for filing his petition is governed by the one-year limitation period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1). Thus his time to file a federal habeas petition expired one year later, October 5, 1999, unless the

time were tolled. *Pratt v. Greiner*, 306 F.3d 1190, 1195 (2d Cir.2002).[1/] The petition, filed 1,021 days later, was well beyond the one-year limitation. Thus, the critical issue is whether sufficient time was tolled by pending state court motions seeking post conviction or collateral review.

The time for filing a federal habeas petition is tolled during the time that properly filed state post-conviction proceedings are pending. 28 U.S.C. § 2244(d)(2); *Duncan v. Walker*, 533 U.S. 167, 180–82 (2001). On June 9, 1998, before his conviction was final, Petitioner filed a motion with the Broome County Court for an order vacating judgment under N.Y. CRIM. PROC. LAW, § 440.10.[2/] Also on that date Petitioner filed a motion for re-argument before the New York Supreme Court, Appellate Division, which was denied on July 20, 1998. On September 29, 1998, the Broome County Court denied his § 440.10 motion. On October 28, 1998, Petitioner sought leave from the Appellate Division to appeal denial of his § 440.10 motion, which motion was denied on December 16, 1998. Thus, the time between October 5 and December 16, 1998, 72 days, was tolled. Respondent appears to concede that at this point Petitioner had until December 16, 1999, within which to file his habeas petition in this Court.[3/] Without further explanation, Respondent contends that this was the date by which Petitioner was required to file his habeas petition in this Court. Unfortunately, that is not the case. Petitioner subsequently filed a series of post-conviction motions in the state courts. To the extent these

---

[1/] Respondent incorrectly argues that Petitioner's conviction became final July 8, 1998, 90 days after the New York Court of Appeals first denied leave to appeal. However, his avenue of direct attack on his conviction in the state courts did not expire until such time as the New York Court of Appeals acted upon Petitioner's timely request for reconsideration.

[2/] The motion bears a date of June 9 but does not have a date filed stamp. Under the federal prison mail box rule, a *pro se* prisoner's habeas petition is deemed filed when he gives it to prison officials. *Walker v. Jastremski*, 430 F.3d 560, 562 n. 1 (2d Cir.2005). Notwithstanding New York's apparent rejection of the mailbox rule, the Second Circuit applies the federal mail box rule in determining whether the statute of limitations for filing a federal habeas petition is tolled. *Fernandez v. Artuz*, 402 F.3d 111, 114–15 (2d Cir.), *cert. denied*, 546 U.S. ___, 126 S.Ct. 79 (2005) (memo). In the absence of evidence that a later date applies, the Court assumes it was handed to prison officials on the date it bears.

[3/] The record also reflects that on November 3, 1999, Petitioner requested the stenographic minutes of criminal and grand jury proceedings, which request was denied by the Broome County Court on December 7, 1999. On January 10, 2000, Petitioner filed a request for an enlargement of time within which to appeal the decision of the Broome County Court, which request was denied March 16, 2000. The pendency of these proceedings did not toll the one-year limitation period. *Hodge v. Greiner* , 269 F.3d 104, 107 (2d Cir.2001).

were properly filed and pending the time was also tolled.  "[A] state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Bennett v. Artuz* , 199 F.3d 116, 120 (2d Cir.1999).  In determining whether pending application for state postconviction or other collateral review was "properly filed," for purposes of Antiterrorism and Effective Death Penalty Act's (AEDPA) pending-state-petition tolling provision, this Court examines only whether the application was submitted according to state's procedural requirements, such as rules governing notice and time and place of filing; it does not consider whether application was procedurally barred under state successive postconviction provisions. *Id*., 199 F.3d at 121–23.  The Court does not scrutinize the merits of the motion. *Pratt v. Greiner*, 306 F.3d at 1192.

On February 9, 2000, Petitioner filed a second motion under § 440.10 in the Broome County Court.[4]  This motion was denied March 17, 2000.  Petitioner then had 30 days, until Monday, April 17, 2000,  within which to seek discretionary review by the Appellate Division. N.Y. CRIM. PROC. LAW §§ 450.15; 460.10(4)(a).  Time tolled: 69 days.[5]

On May 17, 2000, petitioner filed a motion with the trial court seeking DNA testing.  On May 20, 2000, he filed with the trial court another § 440.10 motion.  Both motions were denied on June 16, 2000.  Petitioner appealed and the Appellate Division affirmed the June 16, 2000 order on November 15, 2001. *People v. Pugh*, 732 N.Y.S.2d 673 (N.Y.A.D.2001).  Petitioner then had 30 days within which to seek review by the New York Court of Appeals.  Time tolled: 578 days.[6]

---

[4] Although misdenominated a motion under CPL § 440.30, it was brought under § 440.10 as § 440.30 provides the procedure under which a Motion made under § 440.10 is processed.

[5] Although the record shows that Petitioner had moved to amend his February 90, 2000, motion, which was not denied until April 11, 2000, and filed a motion for leave to appeal on April 20, 2000, which was not denied until June 23, 2000, these motions do not toll the running of the one-year limitation period.  *See, e.g., Hizbullahankhamon v. Walker*, 255 F.3d 265, 269–74 (2d Cir.2001); *Adeline v. Stinson*, 206 F.3d 249, 252–53 (2d Cir.2000).

[6] Although Petitioner filed other state court proceedings that were pending during that period, they ran currently with the time that the motion related to the DNA testing was pending or were matters that did not toll the running of the limitation period.  Consequently, these had no impact on tolling.

Although Petitioner filed his petition 1,021 days after his conviction became final, 719 of those days were tolled, resulting in his petition being filed within 302 days, well within the one-year limit.  Petitioner's habeas petition was timely filed.

In his petition Petitioner raises five grounds.  The first three grounds assert ineffective assistance of counsel: (1) failure of defense counsel to obtain a *Ventimiglia* ruling;[7] (2) failure to seek dismissal of the indictment based upon perjurious testimony; and (3) various asserted errors of omission regarding pretrial, trial, and appellate proceedings.  Ground Four alleges a *Brady* violation.[8]  Ground Five challenges the sufficiency of the evidence.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decisions of the state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court addressing the issue or issues raised in the petition before this Court. *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir.2000).   In making this determination, it is irrelevant whether the state court cites the Supreme Court precedents, or is even aware of them; the standard is met "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  In this case the last reasoned decision in this case as to the first three grounds (ineffective assistance of counsel) was the September 29, 1998 decision of the Broome County Court on his first CPL § 440.10 motion; as to the fourth ground the September 4, 2001, the decision of the Broome County Court on a subsequent CPL § 440.10 motion; and as to the fifth ground, that of the Appellate Division on

---

[7] The procedure in New York criminal proceedings for precluding the People from introducing a defendant's uncharged criminal, vicious, or immoral conduct in the direct case.  Named after *People v. Ventimiglia*, 420 N.E.2d 59 (N.Y.1981).

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

his direct appeal. In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The Appellate Division, in affirming on direct appeal, summarized the underlying facts of the crimes of which Petitioner was convicted as follows.

> In the early morning hours of March 25, 1995, the victim, a 29-year-old cocaine addict and prostitute, ran naked through the streets of the City of Binghamton, Broome County, knocking on apartments until someone finally answered the door. William Covington, upon opening the door to his home, gave the victim a robe and called the police. She was upset and crying and her face was bruised.
>
> Police investigation revealed that the victim had been hiding out at the apartment of Sandra Bentz, an exotic dancer, attempting to avoid defendant. On the morning of March 25, 1995, defendant arrived at Bentz's apartment and, when he saw the victim, he began slapping her and demanding that she pay him money for drugs she had been holding for him. As defendant contended that he "owned" her, she returned with him, at his insistence, to the apartment of Duane Puryea where defendant had recently been staying. After repeated physical and sexual assaults, a moment came when defendant left the room and an opportunity for escape was presented.
>
> After interviewing the victim and arranging for her transportation to the hospital, police officers went to Puryea's apartment in an attempt to locate defendant. Speaking to Puryea and receiving permission to enter, the officers looked in a back bedroom and viewed what appeared to be the victim's clothes and purse on the floor. The bedroom was secured for further investigation and later, upon the written consent of Puryea, a search of the bedroom occurred. According to Puryea, defendant had been staying at the apartment "on and off" for a few months and the bedroom in which he slept was also used by Puryea as a guest room for his ex-girlfriend and his daughter.

The first three grounds, asserting ineffective assistance of counsel, were presented to the Broome County Court in Petitioner's first CPL § 440.10 motion. In denying the motion, the Broome County Court held:

> Penal Law Article 450 governs the disposal of stolen property. The record supports that the property in question was not stolen property; the defendant makes no allegation that it was stolen property, only that it must be treated as such, "under the mandates of Penal Law 450.10." He offers no relevant authority for this position. The failure by counsel to move to preclude on this basis, was not error, and, obviously, is not indicative of ineffectiveness. The People correctly

argue that the motion should be summarily denied as to this ground. Criminal Procedure Law § 440.10(2)(c); § 440.10 (3) (a).

Likewise the record supports there was no *Ventimiglia* error, either on the part of the prosecutor or defense counsel. The evidence of the assaultive conduct by the defendant was not uncharged; it was the evidence supporting the element of forcible compulsion in both counts of the indictment and properly admissible. No pre-trial hearing was necessary or appropriate, as there was no legitimate strategic or tactical basis to object to the introduction of this evidence, and of course, no error was committed by defense counsel in failing to do so.

As to defendant's remaining complaints with respect to ineffectiveness, in order to succeed on an ineffective assistance of counsel claim, a defendant must show that, viewed in the totality of the circumstances, he or she was deprived of meaningful representation. See, People v. Baldi, 54 NY2d 137. "A contention of ineffective assistance of trial counsel requires proof of less than meaningful representation, rather than disagreement with [counsel's] strategies and tactics . . ." (People v Rivera, 71 NY2d 705, 708-709 [citation omitted]; see, People v. Benn, 68 NY2d 941.

Defendant urges that counsel's failure to move to dismiss the indictment after having learned of the complaining witness' false testimony before the grand jury regarding prior consensual sexual conduct with the defendant amounts to ineffective assistance of counsel. The court notes that sufficient facts appear on the record of the proceedings underlying the judgement to have permitted adequate review of this ground or issue on appeal. Thus, as to this ground, the motion must be denied. CPL §440.10(2)(c).

Were the court to address the issue, it would deny the motion. It is well settled that counsel's failure to make a pretrial motion does not, by itself, establish ineffective assistance. See, People v. Mateo, AD2d , 1998 NY Slip Op. 07161 (Third Department). In this case, unlike People v. Pelchatt, 62 NY2d 97, notwithstanding the victim's false testimony with respect to prior consensual sexual conduct with the defendant, the evidence before the grand jury was legally sufficient. In fact, had she testified truthfully as to the prior sexual conduct, the evidence before the grand jury was still legally sufficient.

Even treating defendant's claim as one alleging a defect in the proceedings, this is not one of those rare cases where irregularities in presenting the case to the grand jury rise to the level of impairing those proceedings and creating the risk of prejudice, sufficient to warrant dismissal. See, People v. Calbud, 49 NY2d 389; People v. Huston, 88 NY2d 400. The defendant makes no claim, nor does the record support, that the false information was known to the prosecutor prior to grand jury, and it is sheer speculation to suggest that had the grand jury heard that which the trial jury did hear, an indictment would not have been returned. Likewise, the defendant inaccurately speculates that had the

> motion been made to dismiss the indictment on this ground, it would have been dismissed.
>
> Under any view of the record in this case, trial counsel's isolated omission, if it was an omission, did not prejudice the defense or defendant's right to a fair trial. People v. Hobot, 84 NY2d 1021. Trial counsel extensively cross-examined the victim on her sordid past, including her consensual sexual conduct with the defendant, and her fabrication before the grand jury.
>
> Defendant's claim of ineffectiveness for failure to call Puryea as a witness at the suppression hearing is based on nothing but speculation that his testimony would have been inconsistent in a material fashion, so as to undermine the conclusion that the officers reasonably relied on Puryea's representation that he had joint authority to allow them to enter the bedroom in question. Nothing in the record, including Puryea's trial testimony (nor, for that matter, in defendant's affidavit in support of his motion), remotely suggests such would have occurred. He has failed to demonstrate the absence of strategic or other legitimate explanations for not calling this witness at the hearing or at trial. See, People v. Garcia, 75 NY2d 973.
>
> The defendant's remaining contentions are without merit.

The Appellate Division on direct appeal disposed of Petitioner's *Ventimiglia* argument as follows:

> Defendant's *Ventimiglia* argument need not detain us either. Upon a *Ventimiglia* hearing, County Court determined that the People wocld be permitted to present testimony only to the effect that defendant claimed that the victim owed him money, not that such money pertained to drug transactions. When Bentz nonetheless testified that defendant came into her apartment and yelled that "he either wanted his money or he wanted his drugs", the court immediately issued a curative instruction, prompting defendant to move for a mistrial. County Court refused, warning the prosecution that if there was any further mention of drug transactions it would grant the mistrial. Although County Court offered to issue a second, stronger warning to the jury, defendant declined that offer, contending now that a mistrial should have been granted. We disagree. As the fleeting reference to the subject matter of drugs was quickly responded to by the court with a curative instruction, we find no abuse of discretion in failing to order a mistrial (see, People v Mullins, 221 AD2d 770, lvs denied 88 NY2d 851, 87 NY2d 1022).

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the

Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

Petitioner's ineffective counsel claims do not even come close to satisfying the *Strickland–Hill* criteria. Distilled to their essence, Petitioner's complaint is not that counsel did or did not do something, but that counsel did not win. Counsel either made the appropriate motions and objections, which were overruled or denied or, in the case of the failure to move to quash the indictment, as explained by the Appellate Division, would have been futile. Consequently, based upon the record, this Court can not say that the decision of the Broome County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief under his ineffective assistance of counsel claims, Claims One through Three, inclusive. *See, e.g., Lynn v. Bliden*, 443 F.3d 238, 246-52 Cir.2006).

Turning to Petitioner's fourth claim for relief, the alleged *Brady* violation, in denying his CPL § 440.10 motion, the Broome County Court held:

> The defendant alleges, in essence, that the victim's testimony at trial, describing the clothing that she wore on the night in question, and left behind as a result of having been compelled to disrobe by the defendant, was different from the clothing secured by the police from the scene, and as described in the police documents provided to the defense. He thus concludes, for purposes of this motion, that the People somehow have suppressed information that should have been disclosed. The defense was made aware of property recovered by the police from the apartment during pre-trial discovery. It is clear, however, that the information that should have been disclosed–the victim's description of her clothing and the existence of the clothing recovered-was disclosed. To the extent the defense chose to pursue any inconsistencies between her description and the actual recovered items, it had that opportunity, and in fact, the defense used this

information to impeach the victim's credibility at trial. His alternative theory on this motion–that the clothing she described was in fact recovered but not disclosed to the defense–is based on sheer speculation.

Thus, there is nothing to be addressed on this motion, as all matters asserted by the defendant appear on the record. (See, CPL 440.10[2][c].) To the extent he claims that *Rosario/Brady* material was not disclosed, his claim in this regard is not supported by sworn factual allegations providing the basis for the information and ground for belief. He claims that Investigator Edwards' "supplemental report" and "statement of what he seen (sic) on the night in question" were not turned over to the defense. However, there is no basis for a conclusion that in fact Investigator Edwards' had prepared such report or made such written statement. Indeed, the defendant's attachment of 'exhibit A,' pages from the police report, disclose only that Investigator Ewanow spoke with Investigator Edwards, who conveyed certain information to Ewanow, who recorded the same in her supplemental report.

The defendant's motion is denied

The U.S. Supreme Court has identified what it calls "the three components of a true *Brady* violation": "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). Of critical import in the case at bar is that there is absolutely no evidence that the prosecution suppressed any evidence. While Petitioner can point to some inconsistencies in what was revealed and, perhaps, that there was a delay in making other disclosures, Petitioner points to nothing in the record that even tangentially supports his supposition that the prosecution suppressed any evidence that was either exculpatory or would have aided in impeaching the People's principal witness against him.[9]

Based upon the record, this Court can not say that the decision of the Broome County Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the state court unreasonably

---

[9] Interestingly enough, had the police found in the room the clothes that the victim testified she was wearing immediately prior to the rape, it would have been more inculpatory than exculpatory as it would have corroborated her testimony.

applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, that the state court decision was not just incorrect or erroneous, but that its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief on his fourth claim.

Petitioner's fifth claim challenges the sufficiency of the evidence to convict him.  In essence, Petitioner's argument is that the jury should not have believed the testimony of the key witness against him—the rape victim.  In disposing of that argument the Appellate Division held:

> Viewing the evidence in a neutral light and deferring to the jury's resolution of credibility issues, we find that despite the victim's sordid past upon which she was extensively cross-examined (see, People v Batista, 235 AD2d 631, lv denied 89 NY2d 1088), the verdict was not against the weight of the evidence and was supported by legally sufficient evidence (see, People v Bleakley, 69 NY2d 490).

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original).  This court must, therefore, determine whether the Appellate Division unreasonably applied *Jackson* in upholding Petitioner's conviction in this case.  In making this determination, this Court must view the evidence as a whole in the light most favorable to the prosecution and defer to the determination of the jury on the weight of the evidence and credibility of witnesses. *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.1996).

Based upon the record, this Court can not say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams*; *i.e.*, that the state court decision was not just incorrect or erroneous, but that its application of clearly established law was objectively unreasonable.   Petitioner is not entitled to relief on his fifth claim.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).  All issues raised in the petition were addressed by the New York Supreme Court, Appellate Division or the Albany County Court in their respective decisions and no reasonable jurist could find that either decision was "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated: March 16, 2007.

 s/ James K. Singleton, Jr. 
JAMES K. SINGLETON, JR.
United States District Judge
